ELLISON BURCH AND WIFE v. JOSHUA F. SMITH AND WIFE.

Fraud may be proved either by intrinsic evidence of unfairness in the transaction itself, or by evidence of facts and circumstances attending it, which, by the ordinary tests by which we judge of the motives to action appear inconsistent with an honest purpose.

Though mere inequality in a bargain, or inadequacy of consideration does not, of itself, afford a distinct ground for annulling a contract, yet there may be such an unconscionableness or inadequacy in a bargain, as to demonstrate some gross imposition or undue influence; and where such unconscionableness or inadequacy is such as to shock the conscience, it is conclusive evidence of fraud.

Appeal from Travis. On the 4th day of June, 1850, in the county of Fayette, in this State, Sarah Ann Burnham, widow of Alfred Burnham, in consideration of two hundred and fifty dollars, acknowledged to have been received, conveyed by writing under seal, to Sarah Burnham, of the county and State aforesaid, " all and singular, my right. title, interest, " claims or demands, in *esse* or in expectancy, as widow, or sur- " viving wife, of the said Alfred Burnham, deceased." On the 22d May, 1852, the said Sarah Ann brought this suit to set said conveyance aside on the ground of fraud.

The plaintiff's evidence was that she was married to Alfred Burnham, the defendant's brother, in Tennessee, in 1849 ; that Burnham lived in Fayette county, Texas, at the time ; that he died at New Orleans on his way home, in the winter of 1849-50; and that plaintiff came on to Fayette county, Texas. A witness for plaintiff testified as follows : " I heard the defendant " say she had bought plaintiff's interest in her husband's estate, " and that she would get a note or notes from Mr. Dennison, " and pay it or them to plaintiff for her interest. I prepared " to leave on the 7th of June, 1850, and plaintiff was to go " with me (back to Tennessee.) She desired me to go with " her to defendant's house to get the pay for her interest. I

"went with her to defendant's house, and she, defendant, told "plaintiff that Mr. Baker was to have been down before then "and brought the note or notes. The plaintiff told defendant "that she was bound to start next morning with me ; that she "had come down for her pay and wanted it. The defendant "still said that Mr. Baker was to have been down with the "note or notes, and that she was then looking for him. We "staid at her house till quite late in the evening. Baker not "coming, we left, and met Baker after night, and called on him "for the note or notes, and he said that he had come off and "forgot them. The plaintiff left with me on the 7th of June, "1850, and never got her pay before she left, nor while she "was with me. She had $170, which she told me was all the "money she had in the world. My grandfather and the father "of the plaintiff were brothers." The plaintiff introduced the inventory and appraisement of the property of the estate of the said Alfred Burnham, deceased, which amounted to $1,873 57 ; it was dated in May, 1850, and was returned by Sarah Burnham, administratrix, &c. The plaintiff also introduced in evidence the deed from herself to the defendant. This was all the testimony introduced by the plaintiff.

The defendant then introduced her own answers to interrogatories propounded by the plaintiff, which the latter had declined to read in evidence, as follows : It is not true that I did not perform the contract between myself and the plaintiff, with reference to her interest in the estate of Alfred Burnham. The plaintiff came to my house in Fayette county about the middle of January, 1850, claiming to be the widow of my deceased brother, Alfred Burnham. After some time the plaintiff made application to the County Court of Fayette county for letters of administration upon the estate of Alfred Burnham. Afterwards the plaintiff became dissatisfied with her act, and declared to me that she would not stay in Texas two years for her interest in the estate, and proposed to me to sell out her interest. This I did not want to buy, inasmuch as the

estate of my brother was considerably incumbered with debt, and had only personal property belonging thereto, and I did not know whether the interest of the plaintiff was worth much to me.  I at last agreed to give the plaintiff for her supposed interest two hundred and forty dollars, as follows : To pay a debt plaintiff owed to one Thomas L. Denison, of forty dollars, and to procure from said Denison, if I could, an order on one Thomas Mosely, in favor of the plaintiff, for the remainder ; but if Denison would not let me have the order or note on Mosely, then I was to give my own note for said remainder, to be paid by me to plaintiff upon final settlement of the estate. This occurred at my house sometime about the last of March or first of April.  A further stipulation in the above contract of sale, was, that the plaintiff should prove before the Court her marriage with Alfred Burnham, as a condition precedent to the performance of the contract on my part, and prove up a debt she said she held against Mr. Burnham of $240, in order that I might secure the interest passing by the contract from her.  This the plaintiff found she was unable to do in Texas, and thereupon this part of the contract was so changed, that the plaintiff, when she returned to Tennessee (where she was about going) should send to me proper evidence of her marriage with Alfred Burnham, and I was then to execute my note for said remainder as before stated ; and upon this understanding, the plaintiff, of her own free will and accord, executed to me a quit claim deed for her supposed interest in Alfred Burnham's estate ; and I paid to Denison the forty dollars and stand ready to pay to the plaintiff the remainder of the above sum, as stated, whenever she complies with her contract with me in reference thereto.  The interest of the plaintiff is exceedingly difficult to determine.  There was but little, if any, community property, besides the estate was heavily incumbered with debt.  There was no land and no homestead, and I consider that I have made nothing more than to get the control and management of my brother's children, instead of this being

committed to a stranger. The administration is not yet closed and there must be other sales to pay debts which will very nearly take all the property belonging thereto.

The plaintiff paid the forty dollars and interest thereon into Court, for the defendant.

Verdict and judgment for plaintiff. Motion for new trial overruled. Both parties married during the progress of this suit, and their husbands were made parties.

*J. A. & R. Green*, for appellant. The verdict of the jury was contrary to law and evidence. It is true, this Court seldom reverses the verdict of a jury. But this case is thought to be one where the verdict of a jury being given, not on conflicting evidence, but on the absence of evidence, ought to be reversed.

That mere inadequacy of consideration is not sufficient proof of fraud, except in cases so glaring as to shock the conscience, is law certainly. (2 Johns. Ch. R. 1 ; 14 Johns. R. 527 ; 1 Story Eq. Sec. 245 and 246.) In this case no such inadequacy appears, especially when the risk of the defendant is considered.

The only possible ground on which the jury could presume fraud was in the defendant not paying the two hundred dollars due the plaintiff. The jury thought the excuse on which the money was retained frivolous. But this is not a ground for the rescission of an executed, but only of an executory contract. The condition on which the money was to be paid, viz: of proving that Sarah Ann Burnham was married to Alfred Burnham, having been complied with, the judgment ought to have been, that the plaintiff recover the consideration money of the contract, and that the conveyance remain as it is ; and this Court having all the facts before it can render the proper judgment.

*Webb & Harcourt*, for appellees.

Burch v. Smith.

WHEELER, J. There is no complaint of the instructions, or any ruling of the Court upon the trial; and the only question is whether the evidence was sufficient to warrant the verdict.

It is true that fraud will not be presumed, but must be proved; and that mere inequality in the bargain, or inadequacy of consideration will not, in itself, afford a distinct ground for annulling a contract; yet fraud may be proved by circumstantial evidence. It is not, in its nature, discernible by the direct evidence of the senses; and is usually so covert and concealed, or is attended with such attempts at concealment, as to be incapable of proof otherwise than by circumstantial or presumptive evidence. Its existence, in a given case, may be proved, either by intrinsic evidence of unfairness in the transaction itself, or by evidence of facts and circumstances attending it, which, by the ordinary tests by which we judge of the motives to action appear inconsistent with an honest purpose. And when it is said that fraud cannot be presumed, it is not meant that the presumption of fraud may not arise, legitimately deduced by a jury from such evidence; but only, that it is not to be assumed of a transaction, that it is fraudulent, in the absence of proof afforded by intrinsic evidence of unfairness in the transaction itself, or extrinsic facts and circumstances leading to that conclusion. There is reason to apprehend that juries are not unfrequently mislead, in cases of this character, by being told that fraud cannot be presumed, but must be proved; thereby inducing the belief, that fraud is a thing which has a material existence, is tangible, and cannot be otherwise proved than by evidence direct and positive. Such is not its nature; it is not a thing susceptible of ocular observation, or physical demonstration. Yet its existence, in a given case, may be sufficiently demonstrated for judicial purposes, and to warrant judicial action, by intrinsic evidence of unfairness in the contract or transaction itself. Thus, though mere inequality in a bargain, or inadequacy of consideration, would not, of itself, unattended with fraud, afford a distinct ground

for annulling the contract, yet, " there may be (in the words
" of Judge Story) such an unconscionableness or inadequacy in
" a bargain, as to demonstrate some gross imposition, or some
" undue influence ; and in such cases Courts of Equity ought to
" interfere, upon the satifactory ground of fraud.    But then
" (he adds) such unconscionableness or inadequacy should be
" made out, as would (to use an expressive phrase) shock the
" conscience, and amount, in itself, to conclusive and decisive
" evidence of fraud.    And where there are other ingredients in
" in the case, of a suspicious nature, or  peculiar relations be-
" tween the parties, gross inadequacy of price must necessarily
" furnish the most vehement presumption of fraud."    (1 Story,
Eq. Sec. 246.)   Thus, it is seen that Courts of Equity recognize
the doctrine, that there may be such unconscionableness and
inadequacy in the bargain as to amount, in  itself, to  decisive
evidence of fraud ;  and though mere inadequacy of price, *per se*,
is not, yet fraud is sufficient and  satistactory ground of  relief
against a contract.

The present case is not wanting in  evidence, both  intrinsic
and extrinsic of the contract, sufficient to  warrant the setting
it aside, upon the ground of  fraud.    In her answer to interro-
gatories, the defendant admits that but forty dollars of the con-
sideration was  paid ;  that she promised to pay  the  residue of
the two hundred  and  forty dollars, the  real  consideration, in
the notes, or draft of a third person ;  but says she was unable
to do so, and that it was agreed, that, when the plaintiff should
prove up a debt or demand she had  on  the  estate, and  prove
before the Court her marriage—but  being unable to  do  so in
Texas—should forward to the defendant from  Tennessee, pro-
per evidence of  her marriage with her  deceased husband, she
was to give the plaintiff her own note payable on the final set-
tlement of the estate, in place of the notes or draft first agreed
to be given ;  which she professes her readiness to do, when the
plaintiff shall have complied with her part of  the agreement ;
and she insists that the plaintiff's performance was a condition

precedent to performance on her part. Upon these terms and conditions, she says, the plaintiff, of her own free will, executed and delivered to her the deed in question. According to this, the defendant's own version of the contract, if the plaintiff should fail to perform the precedent conditions, the defendant was to retain and enjoy the title and right of the plaintiff in the estate, without the payment of anything more, or without any consideration, except the forty dollars she says she had already paid. And though she imposed such terms, and required solemn proof of the plaintiff's marriage as a condition precedent to her even giving her note for the payment of the consideration, she did not hesitate to take from the plaintiff a full and formal deed, conveying all her "right, title, interest, claims or demands, in *esse*, or in expectancy, as widow or surviving wife," of the deceased. Such a contract, in itself, would seem so flagrantly unequal, unjust and oppressive, as (in the language of Judge Story) "to demonstrate some gross imposition or some undue influence." "Such unconscionableness and inadequacy" as to "shock the conscience, and amount in itself to conclusive and decisive evidence of fraud;" and especially when the circumstances, and the relations subsisting between the parties are considered, to afford a satisfactory ground for annulling the contract.

But there is also other evidence extrinsic of the contract, besides that afforded by the situation and relations of the parties, which conduces to the same result. The evidence of the witness Patton shows, that the plaintiff was deceived by promises of payment held out by the defendant up to the very time of her departure from the country ; and the jury might well conclude that the deception was intentional, practiced with the design of depriving the plaintiff of her rights in her deceased husband's estate without compensation. Where the question is one of fraudulent intent, it is peculiarly the province of the jury to judge of the weight and sufficiency of the evidence. (Briscoe v. Bronaugh, 1 Tex. R. 326.) We are of opinion that

the verdict was well warranted by the evidence, and that the Court did not err in giving judgment thereon annulling the deed. The judgment is affirmed.

Judgment affirmed.