BRIGHT LOWRIE v. THE STATE OF TEXAS.

1. RECOGNIZANCE.—Though the code prescribes what shall be a sufficient designation in a recognizance of the accusation preferred against a defendant, by stating that it shall be sufficient if it state the name of the offense with which the defendant is charged, (Paschal's Dig., art. 2731,) it omits to prescribe what shall be sufficient when an offense is not called by any defined name. A recognizance taken in a case where the offense is not known by any defined name, but is embraced by some generic term used in the code, as "gaming," will be sufficient, if it contain a reasonably certain description of the offense charged so as to indicate the particular offense, or which one of a particular class of offenses is meant.

2. GAMING—CHARGE OF COURT.—A charge which assumes as matter of law that two games of cards played in two adjoining rooms, the door being open between the rooms while other persons were present who were not playing, would make one of the rooms in which defendant played a public place, is erroneous.

3. Distinguished from Wheelock v. The State, 15 Tex., 253, 265, and Parker v. The State, 26 Tex., 207.

APPEAL from Rusk. Tried below before the Hon. M. D. Ector.

The recognizance entered into by the defendant on appeal designated the offense with which he was charged as "unlawful card-playing." The assistant attorney general moved to dismiss the appeal because the paper which purported to be a recognizance did not state the offense for which appellant was indicted. The charge given by the court and the facts on which it was predicated are fully stated in the opinion.

*A. J. Peeler*, Assistant Attorney General, for the State, cited 2 Paschal's Digest, art. 6599 and note, and 1 Paschal's Digest, arts. 2044, 2045, and notes.

ROBERTS, CHIEF JUSTICE.—The assistant attorney general moved to dismiss the appeal in this case because of the alleged defect in the recognizance in naming the offense of which the defendant had been convicted "unlawful card-

playing," he having been convicted under an indictment charging that the defendant (with others) "did play a game with cards in a certain art gallery, to wit, Whitley's art gallery, then and there situate, the said art gallery being then and there a public place."

"A recognizance is an undertaking entered into before the Supreme or District Court by the defendant in a criminal action and his sureties that the defendant will appear for trial before the proper court upon the accusation preferred against him." (Paschal's Dig., art. 2727.)

The code provides that it shall be a sufficient designation of the accusation preferred against the defendant in the recognizance "if it state the name of the offense with which the defendant is charged." Paschal's Dig., art. 2731. It omits to prescribe what shall be sufficient when an offense is not called by any defined name—such as assault, theft, robbery, murder, and arson—used in the code.

The offense charged in this indictment has no specific name given to it in the code, but is one of a number of offenses classed under the general head of "gaming," which, as a generic term, embraces in its proper signification many games that are not prohibited by law. In such cases this court has held that it is sufficient if in the recognizance there is a reasonably certain description of the offense charged, so as to indicate the particular offense, or which one of a particular class of offenses is meant. Whether the effort in this case be regarded as giving a name to or making a description of the offense charged against the defendant, we are of opinion that it is sufficient, as the terms " unlawful card playing" point out with reasonable certainty the class of illegal gaming contained in the indictment, which is playing at a game with cards in one of the prohibited places. (Paschal's Dig., art. 2044.) The motion is therefore overruled.

The defendant was convicted, and, amongst other things, sets up as grounds of reversal of the judgment that the

facts in proof did not warrant it, and that the court erred in the charge which controlled the finding of the jury.

There were four counts in the indictment, each designating different places, viz: a house for retailing spirituous liquors, a storehouse, an outhouse where people resort, and an "art gallery" of Whitley's, charged to be then and there "a public place," as before stated in discussing the motion to dismiss the appeal. The last count mentioned here is the one upon which the jury found, as is concluded from the fact that it is the only one on which the verdict could be supported by the evidence in reference to the law as charged by the court upon the trial. Upon that count the evidence was that one of the witnesses, Taliaferro, had just finished a two-story house in the town of Henderson with two upper rooms, one of which was occupied by Whitley as an art or picture gallery which was not used by him at night. The upper room was entered by a side door and up a stairway. Witness did not know whether the door was locked or not at the time of the playing of the cards; the door between the two upper rooms was open. The use made of the other upper room is not stated. Persons, the number not stated, were permitted by the owner of the house to go up into those rooms on the night of the playing, he being present himself also. This defendant and several other persons played at a game with cards at night in the said art gallery, and at the same time a game was being played in the adjoining room up stairs. One of the witnesses thought that there were several persons then present who were not engaged in the game. These were the only games proved ever to have taken place in that house in any part of it.

Upon this evidence, adduced in support of said last-named count, the court charged the jury as follows:

"If you believe from the evidence that the defendant did play at a game of cards in a house, a certain art gallery, to wit, Whitley's art gallery, and that said house was

so closed and the people so excluded as to cut off and prevent all observation from without of everything within, and that no other persons were present than those who went there for the purpose of gaming, you will consider that said art gallery was not a public place; or if you find from the evidence that there were two different games of cards going on at the same time up stairs, the second floor of the same building, in different rooms with no doors between the two rooms, when there were different games being played at the same time, and that there were other persons than those engaged in said games who had resorted there for the purpose of gaming present, you will consider that the house where said playing was done was a public place."

This charge is substantially correspondent to the facts proved, and makes the illegality of the card-playing to depend upon two facts in addition to the act of playing by the defendant with others, to wit, that there were two games carried on in adjoining rooms, the door between the two rooms being open, and that other persons were present who did not come there to play at a game with cards, and that those two additional facts would make the card-playing by defendant there then illegal, because they would make the art gallery (it being one of the rooms) a public place.

It is to be particularly observed that whatever publicity might have pertained to the room by its being an "art gallery" was not presented in this charge for the consideration of the jury in determining whether or not it was a public place or house, and therefore we must presume that they found it to be a public place as charged, without any reference to that fact whatever, on the two facts embraced in the charge, which they were instructed would make the room a public place.

The playing at a game with cards in itself is not unlawful. It is the prohibited house or place at which the game

is played that makes it illegal. It was the business and purpose of the legislature to give such a description of the prohibited places as that they could be known to and described to the jury by the judges who administered the law, and be understood by the people who had to be governed by the law. The mode of doing this was by enumerating certain houses and places that are necessarily public from the use made of them, such as a house for retailing spirituous liquors, a storehouse, inn, tavern, street, highway, and an outhouse where people resort, (which, as the others named, is made public by being accessible habitually to an indefinite number of persons.) To these are added all houses commonly known as public, and all gaming houses, and rooms attached to a public house, whether shut or open, which is commonly used for gaming; and in addition to all these there are added any other public house and other public place, besides those specially named. (Paschal's Dig., arts. 2044–2045.)

These last, though more general than the others, are no less thereby designations of prohibited houses and places than those formerly mentioned of a more restricted and definite signification.

It is the duty of the court to explain to the jury, in a general way at least, what appurtenant facts or qualities constitute a public house or a public place, they being words used in the law descriptive of prohibited houses and places. (Parker *v.* The State, 26 Tex., 207.)

It is the province of the jury to determine whether or not such facts or qualities have been established by the evidence adduced on the trial which the court has instructed them to be necessary to make the house or place public at which the playing at a game with cards took place. In this case the jury found strictly in accordance with the charge, and were fully justified by the evidence in so doing; and therefore the only question is, was the charge of court correct in telling the jury that the art

gallery was made a public place by the attendant circumstances alone; that two games were played in adjoining
upper rooms, the middle door being open, and several persons besides those engaged in the games being present?
We think not. The house is not shown to have been one
of the houses prohibited by name. It was not shown to
be a house commonly known as a public house or a gaming
house, or a room attached to a public house commonly used
for gaming. Falling under none of the houses or places
specially named, it must have been a public place, if at
all, by the mode of its use generally, or by being commonly resorted to for some purpose that attracted the public, or by being a house where a large number of people
were temporarily for some object which for the time rendered it accessible to the public. Two games played in
the same house, otherwise private, as a parlor in a dwellinghouse, whether in the same or in different rooms, could
not of themselves make the private house a public place
by the mere numbers engaged in the games. And several
other persons looking on, as spectators merely, could certainly not make it a public place, for several persons, as
that term is generally understood, and as used in reference
to the evidence in this case, could hardly make any private
house a public place by the mere temporary accumulation
of numbers, as might be done where a large number of
persons might assemble at a private house to hold an
election, a justice's court, a race track, a muster ground,
or other such place, where people assemble, upon an express or implied permission, for some purpose of a public
character. (See Bledsoe *v.* The State, 21 Tex., 223; Parker *v.* The State, 26 Tex., 206, 207.) Any number of
persons assembled "in a private business office, or in a
private room, or in a private residence," on private business or for social intercourse, does not thereby render
either of them a public house or public place, unless the
office or room or residence has had, by its use, attached to

it the character of an office, room, or residence commonly used for gaming, or is used so as to be properly denominated a gaming-house, or unless the private residence is also a house for retailing spirituous liquors. (Paschal's Dig., art. 2045.)

There are three cases of Wheelock v. The State of Texas in 15 Tex., 253–264, in which the question is considered as to what facts will warrant the jury to presume that a house is "an outhouse where people resort" within the meaning of the statute. It was proved by a witness that the defendant, Wheelock, was seen playing cards with others in a house standing out and apart from houses occupied and used as dwellings or business houses, and which was itself so unoccupied, and that other persons were present in said house at the time not concerned in the game, and the fact was not negatived that persons resorted to that house at other times for gaming. The court held that "from the fact that so many persons were found to have resorted to the house for such a purpose at that time, we think the jury might well conclude it was resorted to for a like purpose at other times, and, in other words, that it was a house commonly resorted to for gaming purposes." (15 Tex., 225.) What was said in this case and in another (15 Tex., 263) shows plainly that the fact that other persons were present who were not engaged in the game, and the fact, not negatived, that persons had resorted there at other times for gaming, left it to be presumed by the jury that such resort had been made by persons to the house as gave to it the character of being "an outhouse where people resort;" and they having so found upon such evidence, their verdict would not be disturbed on appeal to the Supreme Court. These cases do not assume to establish, as matter of law, that several persons being present where others are playing at a game with cards necessarily makes an unoccupied house "an outhouse where people resort," but only that the jury might from that fact, in

the absence of opposing evidence, presume another fact, which was that persons then and at other times so resorted to the house as to give to it that character, which is substantially expressed in that part of the opinion above quoted. It does not follow from this case that the Supreme Court would have sanctioned a charge of the court, had any such been given, that, as matter of law, the jury must understand that several persons being present where others are playing at a game with cards will of itself necessarily make an outhouse "an outhouse where people resort" in the meaning of the statute.

There is a marked difference between the jury's right to presume the existence of one fact from the proof of another and the right of the court to charge as matter of law that the proof of one fact necessarily establishes another in a case of this kind.

Particular notice of these cases of Wheelock against the State, 21 Tex., has here been taken, because it is supposed that, upon the authority of them the charge was given in this case. Had the question arisen in this case upon the sufficiency of the evidence to warrant the presumption of the jury, instead of upon the charge of the court, the cases would not have been applicable, because in those cases the question was as to what evidence would warrant the presumption by the jury (when considered in this court on appeal) that it was "an outhouse where people resort," and in this case what evidence would show a house, otherwise private, to be a "public place"—which two houses are or may be very different, and have usually their peculiar character enstamped upon them by a different state of facts pertaining to them. (Wheelock *v.* The State, (two cases,) 15 Tex., 253–265; Parker *v.* The State, 26 Tex., 207; Bledsoe *v.* The State, 21 Tex., 223.)

This case goes further than that, however, by assuming in the charge, as matter of law, that two games with cards played in the two rooms while several other persons were

present who were not playing would make the room in in which defendant played a public place.

For this error in the charge of the court the judgment is reversed and the cause is remanded.

REVERSED AND REMANDED.