# CHARLESTON

LOCKE *et al* v. RUSSELL *et al*.

Submitted January 27, 1915. Decided February 16, 1915.

MINES AND MINERALS—*Oil and Gas Lease—Construction—Gas Well Rentals.*

> Wells producing oil, but not gas, in paying quantities, drilled and operated under an oil and gas lease, one eighth of the oil produced and saved to be delivered free of cost in pipe-lines or tanks to the

credit of lessors, and two hundred dollars to be paid annually, being reserved as compensation respectively for the oil produced and saved and for the gas marketed or used off the premises from such wells, the parties to the contract having since completion of each well deemed and treated the wells as oil wells only, the lessors accepting the one eighth royalty oil without complaint or demand for gas well rentals, do not become gas wells within the purview of the contract, entitling lessors to recover rentals prescribed by the lease therefor, solely because the lessees have, by a duly efficient process, converted into gasoline, without perceptible diminutation in the oil produced, that component part thereof theretofore wasting, by evaporation, at the casing head, the utilization of which, by such process, having enured to the mutual advantage and profit of the contracting parties.

Error to Circuit Court, Wood County.

Action by Harlan P. Locke and others against Robert W. Russell and others. Judgment for defendants, and plaintiffs bring error.

*Affirmed.*

*Wm. Beard,* for plaintiffs in error.

*Clyde B. Johnson* and *F. B. Moats,* for defendants in error.

LYNCH, JUDGE:

Deeming themselves entitled, under the terms of an oil and gas lease, to recover $1400, one year's rental of $200 for each of seven wells producing oil, but not gas, in paying quantities, drilled on the leased premises, Harlan P. and John W. Locke brought assumpsit against Robert W. Russell and others, remote assignees of the lessee in the contract under which the cause of action, if any, arose. The trial having terminated in a judgment upon a verdict adverse to the claim averred in the declaration, plaintiffs seek reversal upon writ of error.

Within a reasonable time after the date of the lease, seven wells were drilled on plaintiffs' lands, from each of which was, and still is, produced oil, but not gas, in paying quantities. Since completion of each of them, one eighth of the production has regularly been delivered to the lessors pursuant to the terms of the contract; and not until the expiration of about one year after defendants became owners of the lease by assignment, whereby they became vested with the right to operate the wells, did plaintiffs demand or receive any com-

pensation by way of rentals for the gas, if any, produced from any of the wells so drilled. Apparently, they either did not consider the wells as essentially gas wells, or were content to accept their share of the oil, when delivered to them, as sufficient compliance with the requirements of the contract in that respect.; and they admit the same share has likewise regularly been delivered to them subsequent to defendants' acquisition and control of the rights and privileges granted by the lease.

Though during the early stages of development, the oil produced was substantially beneficial and mutually profitable alike to the parties to the contract and their assigns, the production had, before the assignment to defendants, and since has, materially decreased in quantity, and evidently would have become even less remunerative had not defendants and their immediate predecessors installed and connected vacuum pumps with such wells, the purpose thereof being to increase the production therefrom. This process defendants have since continued, and, at the date of the institution of this action, were by this method engaged in extracting oil from plaintiffs' lands. But, observing a marked tendency in the wells, when so pumped, to emit, at the casing head, what defendants call vapor, they successfully attempted to utilize it, for the mutual advantage and benefit of themselves and the lessors, by a process of distillation and compression, thereby converting the escaping substance into gasoline, in addition to, and without any perceptible diminution in, the oil theretofore produced and saved from the premises. From this utilization arose the present controversy, with the result already stated, plaintiffs apparently but erroneously conceiving the notion that the manufacture of gasoline indicated the presence of gas in the several wells and that the use thereof by defendants gave them good cause of action for the gas well rentals prescribed by the lease.

We say plaintiffs misconceived the source from which gasoline emanates. Because, as properly defined, gasoline is a colorless, inflammable fluid, the first and highest distillant of crude petroleum; represents the lightest portions of crude oil; and is extracted from it by distillation, very much as whiskey is distilled and in much the same sort of apparatus.

Americana. Being the most volatile component of petroleum, it readily separates from it, and, in the process of distillation, is the oil drawn off at the lowest temperature. 20 Cyc. 1181; *Insurance Co. v. Swigert,* 11 Ill. App. 590.

Whether the process adopted by defendants is the most available scientific one or not, it is conceded, or at least not denied, that they did, by the process employed, successfully manufacture or save gasoline from the oil produced on plaintiffs lands and that they tendered to plaintiffs one eighth of the proceeds from sales of the gasoline, being the one eighth prescribed by the lease for the oil produced and saved under authority conferred by plaintiffs. This process defendant Russell thus describes in his testimony: ''There is a vacuum pump attached to the casing head of each well, which draws the vapor from the well, which is conveyed to a compressor and heated and pressed, and is then cooled in a cooling tank and separated in a separating tank, and then drawn out of the separating tank into a storage tank''. By way of qualifying himself to speak as an expert in the making of gasoline, he said: ''I was one of the first in the business, in producing gasoline, and have had practical experience''; and that the method described had been in use about four years ''in this country''. Neither his knowledge or experience nor the efficiency of the method employed as described by him, is challenged by any witness testifying in the case.

Though plaintiffs assign numerous grounds for reversal of the judgment, the only meritorious question, as we conceive it, is whether any one or more of the seven wells on the plaintiffs' lands ought to be treated as gas wells within the terms of the contract between the parties. While there is some conflict in the evidence as to the quantity of gas produced from the wells, that conflict the jury resolved in favor of defendants, thus eliminating that question from further consideration. Indeed, their finding could not consistently have been otherwise. The burden of proof rested upon plaintiffs to establish the fact, if true, that some one or more of the several wells did at some time produce, and at the date of this suit was or were producing, gas in paying quantities. They so aver, and, therefore, must prove the facts averred, in order to entitle them to recover in this action. That burden they

have not successfully met. On the contrary, the evidence strongly tends to establish the fact to be that none of the wells produced gas except in very small quantities; and that, although this gas was utilized to some extent in operating wells on other lands in conjunction with those in controversy, none of the wells here involved fall within the definition of a paying gas well. What is such a well was discussed and determined in *Prichard* v. *Freeland Oil Co.*, recently decided by this court. There it was held, under a contract similar to the one here and in effect containing the same covenants, that, "interpreted in the light of all the facts and circumstances surrounding the parties, their relation to each other, the objects and purposes of entering into the contract, and what they subsequently did under it, means a gas well which, considering its location with reference to any market for gas, its capacity as a gas producer, can be profitably operated as such, and not a well producing oil in large quantities and some gas and operated for many years by lessee as an oil well without demand for gas rental by lessor". Manifestly, the definition given in that case forcefully applies to and controls the case now under consideration, and justifies the conclusion, that, under the circumstances, plaintiffs are precluded from maintaining this suit to recover the rentals for gas wells prescribed by the contract.

Nor is there merit in the contention, urged by plaintiffs, that the lease provides oil should be delivered in pipe lines or tanks to the credit of the lessors, from which they argue that the lease bound defendants to dispose of the production either by delivering to their credit in pipe lines or tanks one eighth of the oil produced, or by paying $200 for the gas from each well if gas was found therein in paying quantities. But gas was not found in any of the wells in such quantities. Nor was any demand made for payment for the gas well rentals except as noted, thus showing acquiescence forbidding a different interpretation under the circumstances now existing as to the production of the several wells. Besides, to deliver gasoline in tanks or pipe lines, evidently was impossible or impracticable. How, then, or by what consistency, can plaintiffs complain, if by their skill and ingenuity defendants have utilized that component part of petroleum which otherwise

would have vaporized and escaped into the air, as it did prior to its utilization by defendants? What was theretofore a useless waste defendants, by the process applied and successfully operated, saved and converted into a profitable commercial product, to the mutual benefit and advantage of themselves and their lessors. Plaintiffs thereby evidently suffered no loss whatever. On the contrary, they were financially benefited by it. Nor is there any contention that the oil produced and saved was perceptibly diminished in quantity or value by the utilization of the escaping elements of the petroleum in fact produced from the lands. Defendants were rightfully in possession; their operations were successful and beneficial. They wasted nothing; caused no injury to the land, but did enlarge the revenues therefrom.

Clearly, therefore, plaintiffs were in no sense entitled to the compensation fixed by the contract for paying gas wells. No such wells were drilled or operated on their lands. No rule of law cited or found denies to defendants the right to utilize, by any available process, any useless waste from productions contemplated, so long as the lands are operated under the lease to the mutual advantage and profit of the parties; provided, however, the operator pays or tenders to the landowner his proper share or proportion of the returns from such utilization. Defendants have not only manufactured gasoline, but have tendered plaintiffs, who declined to receive it, their just and fair proportion of the net returns resulting from the product so saved, manufactured and sold.

Perceiving no reasonable ground to do otherwise, we affirm the judgment complained of; saving, however, to plaintiffs the right to collect the share of profits so tendered, should defendants hereafter decline to re-tender it to them. And an order will be accordingly so entered.

*Affirmed.*