MUNGER et al. v. WAGGONER.　(No. 2285.)*

(Court of Civil Appeals of Texas. Amarillo. March 12, 1924. Rehearing Denied April 9, 1924.)

Mines and minerals ⬤⟚79(1)—Written contract allowing lessee to use oil for operating held to permit him to exchange crude oil for more economical fuel oil.

Under a contract providing that lessor was to have delivery and credit for one-eighth of oil produced on premises, with the right to lessee to use oil free of cost for operations, lessee held authorized to pump crude oil to a refinery in which neither party had an interest and receive in exchange fuel oil which was more economical for operating; and, where the lessors collected pay for one-eighth of all crude oil produced, lessee was entitled to recover the value of one-eighth of the oil used in such operations.

Appeal from District Court, Wichita County; W. E. Fitzgerald, Special Judge.

Suit by R. M. Waggoner against H. M. Munger and others. Judgment for plaintiff, and defendants appeal. Affirmed.

⬤⟚For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes
*Writ of error refused May 28, 1924.

Bullington, Boone, Humphrey & Hoffman and Carrigan, Montgomery, Britain, Morgan & King, all of Wichita Falls, for appellants.

Weeks, Morrow & Francis, of Wichita Falls, for appellee.

RANDOLPH, J. Appellee, as plaintiff, brought this suit against appellants to recover the sum of $1,677.06, for the value of certain fuel oil, under claim as below indicated, and also to recover $680 for the rent of a boiler alleged to have been rented to defendants.

The defendants filed their answer containing a general denial, and pleading specially the clauses of a contract in writing between the parties as follows:

"In consideration of the premises the lessee covenants and agrees: (1) To deliver to the credit of lessor, free of cost in the pipe line to which it may connect its wells, or in tanks to be furnished by lessee, the equal one-eighth (⅛) part of all oil produced and saved from the leased premises. * * * Lessee shall have the right to use, free of cost, oil, gas and water produced on said land described above, for its operations thereon, except water from wells and tanks of lessor."

Defendants also, by cross-action, sought recovery against plaintiff for damages to growing crops; but by written agreement between the parties plaintiff's claim for rent of boiler and defendants' claim for damages to crops were abandoned.

The trial court rendered judgment for plaintiff on his claim for value of the fuel oil, and appeal has been taken to this court.

The evidence discloses that the plaintiff, under contract, had the right to use oil produced on the land in his operations on the land. Under our view there is no necessity of straining at a construction of the above clauses of the contract so providing. The evidence further discloses that the plaintiff pumped the crude oil to a refinery on defendants' premises, in which refinery neither plaintiff nor defendants had any interest, and received in return through the same pipe line a like amount of oil which was pumped into separate storage tanks for this purpose. This fuel oil, to the amount of 3,484.84 barrels, was so received and used in plaintiff's operations on the land. The defendants received pay for their one-eighth of the crude oil so delivered to the refinery from the refinery, and plaintiff is seeking to recover from defendants the value of the one-eighth of the oil so used by him in such operations on the land.

There is no question before us, as presented by the evidence, that plaintiff did not use the amount of oil in his operations on the land as claimed by him; but the defendants insist that, because plaintiff chose to exchange the crude oil for fuel oil, he thereby lost his right to charge the defendant with any interest therein. In other words, the question is, not whether the contract gave Waggoner the right to use the oil produced on the land, but did he forfeit this right to so use it by exchanging the crude oil for fuel oil?

No authorities are presented to us by either party herein bearing directly on the point in issue, but quite a number are cited upon the question of the construction of contracts and provisions thereof.

The plaintiff was entitled to use the crude oil produced on the land in his operations on that land. For the reason that crude oil burns more rapidly than does fuel oil and that 1 barrel of fuel oil will last as long and is as serviceable as 1⅓ barrels of crude oil, the plaintiff made the exchange and received in return and used in such operations on said land an equal amount of fuel oil from the refinery. The agreed facts show that this is true. Hence the plaintiff was only doing under the contract what he ought to have done; that is, made the best use of the oil to the advantage of all concerned. It was his duty and it was commendable of him that he should use as little of the oil as was necessary, and any method by which he lessened the amount of oil to be used was required of him.

We do not intend to say here that the plaintiff had the right to take this oil and trade it for derricks or horses, or mules, boilers, and engines, but that he did have the right to use the oil necessary in his operations in such a way as to lessen the amount so used by him for the very purpose for which it was agreed that he should use it. Having the right to use the oil in his operations so as to lessen the cost of the operation and diminish the quantity of oil used by him, which the evidence shows that he did, our construction of the contract is that he was acting within the limits of the contract and that his conduct was a reasonable and commendable performance of its terms as to him.

"Contracts must receive a reasonable interpretation, according to the intention of the parties at the time of their execution. If one construction would make it unreasonable while another would do justice to both parties, the latter would be adopted." 6 R. C. L. § 230.

"Accordingly, it is said that the agreement of the parties is to be ascertained from the plain language used by them, and such agreement is to be enforced no matter what the intention may have been, and that where the meaning of a contract is plain, another meaning cannot be added by implication or intendment. This is the general rule, beyond a doubt, but such required literalism is not to be pushed to the preposterous length of requiring that by its operation the general intention of the parties as evidenced by their contract itself should be frustrated or perverted, either in whole or in part." 6 R. C. L. § 231.

We therefore affirm the judgment of the trial court.