## LIVINGSTON OIL CORPORATION v. WAGGONER. (No. 2470.)

(Court of Civil Appeals of Texas. Amarillo. May 6, 1925. Rehearing Denied June 3, 1925.)

**1. Mines and minerals ⬅79(1)—Finding that lessee must account to lessor for one-eighth of casing-head gas produced by vacuum as constituent of "oil" held warranted by evidence.**

Evidence *held* to warrant finding that casing-head gas, which, like oil, is realty, not personalty, when in place, was constituent of oil, and hence that lessee producing same by "vacuum" process must account to lessor for one-eighth thereof, under contract to deliver such part of all oil produced and saved to lessor's credit.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Oil.]

**2. Contracts ⬅170(1)—Parties' construction entitled to great weight.**

Construction of contract by parties is entitled to great weight, if not of controlling influence, in ascertaining their understanding of its terms.

**3. Mines and minerals ⬅81—Lessor suing purchaser of casing-head gas from lessee for conversion held not to have accepted or acquiesced in contract between lessee and purchaser.**

Lessor suing purchaser of casing-head gas from lessee for value of such gas taken by it up to certain date, and expressly reserving in writing, in settlement with such purchaser, his right to enforce against lessee contract for sums due him after such date, *held* not to have accepted or acquiesced in contract between lessee and purchaser.

**4. Mines and minerals ⬅79(3)—Lessee's right under oil lease to stipulated portion of casing-head gas not affected by increase in production of oil by use of vacuum.**

That production of oil was largely increased by use of vacuum by purchaser of casing-head gas from lessee did not deprive lessor of right under lease to one-eighth of such gas as constituent of oil, it being incumbent on such purchaser to use all legitimate means of getting all oil possible from well.

### On Motion for Rehearing.

**5. Mines and minerals ⬅81—Lessor, entitled to one-eighth of all oil produced, held not limited to recovery of one-eighth of amount received by lessee from purchaser of casing-head gas.**

Lessor, entitled under lease to delivery of one-eighth of all oil produced and saved, including casing-head gas, *held* not limited to recovery of one-eighth of amount received by lessee from purchaser of such gas, but entitled to reasonable market value of such proportion thereof when it should have been delivered to him, though contract with purchaser was made in good faith and benefited lessor by increasing flow of oil through use of vacuum process.

**6. Trover and conversion ⬅4—"Conversion" defined.**

Any act of dominion over another's property constitutes "conversion."

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Conversion.]

**7. Mines and minerals ⬅79(7)—Lessor may sue lessee for conversion of oil or casing-head gas vaporized, brought to surface, and delivered to purchaser.**

Party deprived of title to realty by severance and sale by wrongdoer, as by lessee under oil lease, in vaporizing bringing to surface, and delivering to purchaser oil or casing-head gas without payment of royalty to lessor, may sue for value thereof as for conversion; rule that owner dispossessed by trespasser cannot abandon claim to property and sue for its value being applicable.

---

⬅For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

**3. Courts ⬥92—Decision that casing-head gas was constituent of oil held not dicta, in lessor's action for value of such gas sold by lessee.**

Decision, in suit by lessor against lessee under oil lease, requiring delivery to former of one-eighth of all oil produced and saved, for value of casing-head gas produced and sold by lessee, that such gas was constituent · of oil, *held* not dicta, but required by pleading and evidence.

Appeal from District Court, Wichita County; P. A. Martin, Judge.

Action by R. M. Waggoner against the Livingston Oil Corporation. Judgment for plaintiff, and defendant appeals. Affirmed.

Bonner, Bonner & Sanford and Albert G. Walker, all of Wichita Falls, and Albert T. Patrick, of Tulsa, Okl., for appellant.

Weeks, Morrow, Francis & Hankerson, of Wichita Falls, for appellee.

RANDOLPH, J. This suit was brought in the district court of Wichita county, by R. M. Waggoner against the Livingston Oil Corporation to recover $5,000 alleged to be due him from defendant by reason of the sale of casing-head gas by said company, which gas was alleged to have been produced from land belonging to Waggoner. The appellant was operating a lease which was originally executed by Waggoner to A. R. Calloway in 1917, for the purpose of drilling, mining, and operating for oil, gas, or other minerals, which leasehold estate had by various conveyances been vested in the defendant oil company. The consideration expressed in the lease was $1 and the expense incurred and labor performed in the drilling of a well or wells; also, that the lessee should deliver to the credit of lessor one-eighth of all oil produced and saved, and that the lessee should pay to the lessor $300 each year in advance for the gas from each well where gas only was found. Producing oil wells were brought in, from which, in addition to oil, a substance known as "casing-head gas" was produced. On July 19, 1921, the Livingston Company made a contract with the Skelly Oil Company, in virtue of which the Skelly Company was to maintain a good vacuum on the wells for the life of the lease, and pay to the appellant 10 cents per thousand cubic feet for the casing-head gas sucked to its plant through its vacuum lines.

On trial of the case, which was had before the court without the intervention of a jury, judgment was· rendered decreeing recovery by plaintiff Waggoner, and appellant brings the case to this court for review.

Appellant, by its first and second propositions, asserts, substantially, that the lease contract not providing for the payment of any royalty to the lessor by the lessee, except the equal one-eighth part of the oil produced, such contract did not require the payment of any royalty on the casing-head gas, for the reason that the payment being required to be made upon the "oil" does not include a requirement that it be paid upon "casing-head gas," and that the appellant was entitled to the casing-head gas without accounting to plaintiff for its value. Further, the contention is made in the second proposition that where the lessee has been able to save by-products (such as casing-head gas), which usually goes to waste, he is not required to pay any royalty thereon, and that the trial court erred in holding that appellant was obligated so to do.

Under these propositions, appellant claims that the established rule of practice in Texas recognizes that the granting clause of the lease vests the title to the minerals described in the lease in the lessee immediately upon the delivery of the instrument to the lessee, and that such title is not dependent upon the royalty obligation, citing many decisions to support these contentions; further, that as the title to the gas had vested in the lessee, he had, in virtue of his ownership, the right to do with it as he pleased.

These various propositions all revolve around the question as to whether the term "oil" includes casing-head gas. Taking up the consideration of that question, we find that the decisions are conflicting, and for the purpose of ascertaining whether the evidence and the law justified the trial court in the finding that casing-head gas was included as a constituent of oil, we will first discuss the evidence upon which he based his judgment.

Our conclusion from the evidence is, when speaking of a gas well, reference is had to a well producing commercial or dry gas. Vacuum is a suction carried on an oil well to remove the casing-head gas and to pull the oil through the sand. The first stage of an oil well is that of flowing, the second, pumping, and the third the application of the vacuum which sucks the gas remaining in the well. This process of applying a vacuum increases the oil production.

J. M. Stone, an expert witness for appellant, who states that he helped construct the first absorption plant in Oklahoma, testifying as to the nature of extracting casing-head gas, testifies:

"There are two methods of production. And the method of getting the oil into the flow line and flow tanks is the same. The next method of producing is right from the bottom of the well. In some instances they reduce the 'armiter' of the casing by two inches. Pipe that we call tubing, below, so that the gas that has been reduced in volume and pressure would be still strong enough to leave an oil on the two

inch tubing, the same method as it is done before its flowing period, but that will not tell at all definite whether there is enough gas to do that. If there isn't enough gas to do it, then you have to go in with your tubing and rods and cups and pump it. Whether you pump it to the surface, or whether you flow it to the surface, it is a fact that you use the flow lines in all cases and deliver the oil into the flow tanks. * * * It is possible to turn this gas and crude oil through together direct from the pipe line purchasers' tanks or pipe line. It would be a bad pressure on the well; you would have to make the pipe air-tight, cased up, his casing being connected with flow tanks, with the stock tanks. You would maintain a constant pressure. The pipe line purchasers will take oil and light ends of the gas together. * * * There are two lighter ends, what we call—one is 'integereal' with the oil. The other is a volatile constituent; that is, the dry gas that cannot be held.

"The next process in the production of oil is to apply a vacuum. It isn't only in some fields. The vacuum and that is—in fields where they haven't got the rock, pressure, we have two fields. We have the old formation, what we call the Pennsylvania. That is a very retentive formation, and in the first place presses all the gas into semifluid, compressing it just like a tight bale of hay. * * * It is compressed by natural way, all the formations to a semifluid, not mentioning the dry gases. That is very hard to compress, and one inch of that fluid turns into 900 inches of vapor when it is released from pressure.

"When you go down and open up the earth, that is when it escapes, that is the old formation. In the newer formation, in the Burkburnett, what we call the permean, that is different. We get most of the gases in volume instead of pressure. When that is spent, the gases are spent, and all there is left there is the fluid gases, that is the saturated gases that you can turn into a fluid, and that is saturated thoroughly from the very top of the sand clear to the oil.

"The process of applying a vacuum to an oil well requires what is called a casing-head, to be placed on the casing or pipe that goes down an oil well, and then the suction is applied, takes it out, removes the air pressure, and the effect of that is to suck out, by means of such vacuum, the volatile gases. When a vacuum of that character is applied in a field or a particular lease, the general effect is to increase the production of that lease or that well, at the expense of the nearby wells, so that the well upon which the vacuum is applied will produce a greater quantity of oil than the nearby wells. * * * The second feature of the vacuum, that is the main thing, is in the open sand, that formerly had oil; now it hasn't. The open sand, we must not forget, is not dry. The records of the government shows that the saturation of the sand after the oil has been taken out in some instances is even over 50 per cent. of the former amount of oil; also the volatile gases are still separated in that open sand that formerly was oil, and it has lots of gasoline content. This vacuum gets into this open sand above the shallow oil that we have left now, and thereby produces an awful high content of gas, of gasoline, in other words, the old sand gas, the less volatile gas, that is that the vacuum can pull out, and the new saturated gas is making which is nothing but gasoline. That accounts for the great increase of gasoline, increases the first gas, until it gets altogether depleted. The increase of the volume of the gasoline in the gas until the entire field is altogether depleted.

"And there is a gradual decrease in the volume of the gas, there must be. When I say sand on which oil and gas is found in the earth is really sandstone. Sometimes it is a hard sandstone, and sometimes it is semi. It is more porous. And according to its pores, the oil and gas is apt to be collected in proportions. In the ordinary production of oil without a vacuum, the water pressure on the gravity tends to run the oil down the hole or at the bottom of the well, which is not its nature, slow form, very slow, then has to go trickling down. Sometimes you don't get as much as 50 per cent. of it. In some instances not recoverable at all, owing to many factors; among others, the difficulty of the oil moving through the rock by reason of the various obstructions. It has got to go through millions of little channels before it goes into the shot hole. * * * The common flow, the vacuum just gets—the vacuum converts a saturated gas, that is really a gasoline, that is separated in the formation that formerly the oil was, and it converts into a gas and an awful rich gas. It cannot take oil; it cannot take out the constituents of the oil; the vacuum cannot be going clear through the formation and take all the little elements of the oil on the surface of the formation. * * * All that it does, it converts all the saturated gasoline back into gas, in other words, all condensed gasoline back into a gas out of the formation, but it cannot effect the oil. * * * At any rate, crude oil that is impounded, I mention the earth and these porous rocks that are caused by nature. That crude oil has many constituent elements, and one of them is gasoline, and one is kerosene, and one is naphtha, and so on until you go down to the lower basic. You take a barrel of oil and leave it open in the air, and say it is 41 gravity when it is put into this receptacle, this barrel, leave it there a day or two, and these lightest elements escape to the atmosphere just the same as water. * * *

"This rock down there, this sandrock never gets entirely dry. There is a certain per cent. of it, something like 50 per cent.; it has got what we call adhesion. It is everything; it is lighter; at any rate, it contains gasoline.

"It is actually separated between the grains of the sand, like in the rock. If you take out a piece of the rock, bore out a dry piece of rock where the oil has been and put it in a lavatory, you would get gasoline and gas; in fact, it would smell just like gasoline. It is in a liquid form, and the compression—real gasoline remains in such a liquid form. It is in liquid form underneath the earth. 1,500 feet low it is in liquid form.

"By this casing-head gas method you transfer it from a liquid form into a gasoline form. Thereby you bring it to the top of the earth, then you take it out to the plant and recompress it into a liquid form, so that casing-head gas really starts out in the earth in the liquid,

transferred by the vacuum into gas, and recomposed into a liquid form in its natural state. Some of it that comes out is still in fixed gas, that fixed gas means dry gas, that is still and it is always there. It is separated within the formation, and it cannot entirely escape; only by vacuum help, it escapes. * * * If you take a tank full of oil and put a vacuum in it, you catch this escaping gasoline. You certainly can compose (condense) gasoline out of that. * * * It cannot be gotten out; the gasoline isn't there; what we call the saturated gas cannot be taken out and turned into gasoline unless you put a vacuum to it, in the formation above the oil, and the same vacuum increases double and more the tricking of the oil into the hole. It is nothing but a mechanical lever."

[1] From this statement of the witness' testimony, it will be observed that casing-head gas is a constituent element of oil; that, in place, it is realty, not personal property. Whether gas or oil, it is as announced by Chief Justice Hall, speaking for this court in the case of American Refining Co. v. Tidal Western Oil Corporation, 264 S. W. 338, the settled law in Texas they are, in place, realty.

It is conclusively shown by the testimony of appellant's own witness that casing-head gas is in liquid form in the earth, that it is a constituent of oil, and in order to remove it from the earth it must be vaporized and then carried to the surface, where it is again condensed in liquid form.

We think the trial court, upon the evidence before him, rightly concluded that casing-head gas was included within the term "oil," and that the appellant was required under his contract to account to appellee Waggoner for one-eighth thereof on the basis of oil.

This conclusion is supported by the following authorities: Twin Hills Gasoline Co. v. Bradford Oil Co. (D. C.) 264 F. 440; Wemple v. Producers' Oil Co., 145 La. 1031, 83 So. 232; Thornton on the Law of Oil and Gas, 4th Ed., Sec., 137 B; Locke v. Russell, 75 W. Va. 602, 84 S. E. 948. We also cite the dissenting opinion of Justice Kennamer in the case of Hammett Oil Co. v. Gypsy Oil Co., 95 Okl. 235, 218 P. 506, 34 A. L. R. 275. This opinion concludes the question as we view it.

In addition, our attention is called to the case of Gilbreath v. States Oil Corporation, 4 F. (2d) 232, recently decided by the United States Circuit Court of Appeals at New Orleans, which appellee claims sustains our view in this matter; and a copy of the opinion in which case was promised to be filed with this record, but has not been so filed, hence we do not know if the opinion in that case supports our view.

[2] This construction of the contract was placed upon it by the parties themselves, up to the time that appellant purchased the one-half interest of the Humble Oil Company; the appellant and such company paying to Waggoner one-eighth of the casing-head gas —and the trial court so found.

The construction placed upon a contract by the parties themselves is entitled to great weight, if not of controlling influence, in ascertaining their understanding of its terms. It is said in 6 Ruling Case Law, p. 853, § 241:

"It is to be assumed that parties to a contract know best what was meant by its terms, and are the less liable to be mistaken as to its intention; that each party is alert to protect his own interest and to insist on his rights; and that whatever is done by the parties during the period of the performance of the contract is done under its terms as they understood and intended it to be."

See, also, Bounds v. Hubbard City, 47 Tex. Civ. App. 233, 105 S. W. 59; Railway v. Johnson, 74 Tex. 256, 11 S. W. 1113.

[3] Appellant also contends that it had entered into a written contract with the Skelly Oil Company with reference to the casing-head gas from the lease, and pursuant to which said R. M. Waggoner was paid by the Skelly Oil Company a large amount of money in full payment for all casing-head gas produced up to said date, and said Waggoner agreed not to look to the Skelly Oil Company for further payment for such gas taken from the lease; that said contract was made by the appellant with Skelly Company and expressly acquiesced in and ratified by Waggoner; and that Waggoner, having accepted benefits under it, was estopped to deny that such contract was binding upon him. This contention is met by the fact that Waggoner had sued the Skelly Company for the value of the casing-head gas taken by it up to a certain date, and that in his settlement with that company Waggoner expressly reserved in writing his right to enforce his contract against appellant for such sums as were due him after that date. Waggoner had the right to sue both parties, jointly or severally, and the suit against Skelly Company for the conversion of the oil or casing-head gas would not bind Waggoner by way of acceptance of the contract, and did not show acquiescence in the contract between Skelly Company and appellant. On the contrary, it was an assertion of his rights of ownership under that contract.

[4] The contention of appellant that by the use of the vacuum the production of oil was largely increased, and that plaintiff Waggoner having benefited by such increase, instead of being damaged, was not entitled to recover damages by reason of appellant's appropriation of the casing-head gas from the well, cannot be sustained. This might be true were that contention based upon an injury inflicted in the first instance by a wrongdoer or trespasser, and the authorities cited by appellant bear out such contention in

those cases. But such application of the rule cannot be made to apply to the case at bar. If casing-head gas is a constituent of oil, then, under the contract, Waggoner is entitled to have delivered to him one-eighth of such casing-head gas, and when the appellant converted same, it certainly would not be entitled to offset such conversion against a contractual liability.

The fact that such oil produced was largely increased by the use of the vacuum might be offset against the fact that the life of the well was shortened; however, the question might not be considered from that viewpoint. It was incumbent upon appellant to get all the oil possible out of the well, and to use all legitimate means of doing so. This was not only its duty, but it was incumbent upon appellant to do so. Munger v. Waggoner (Tex. Civ. App.) 260 S. W. 696. Because, by the exercise of diligence and judgment, the appellant largely increased the production of the well, which resulted to the benefit of both Waggoner and appellant, would not entitle it to appropriate the casing-head gas. Appellant would have as much right to say, as the production has largely increased, we are entitled to the increase, because we were diligent in applying modern methods to the withdrawal of the oil from the earth, and for that reason we are entitled to the increase.

The evidence warranted the judgment of the trial court in the amount rendered under his view of casing-head gas being oil, and of the testimony before the court, and we will not disturb such judgment.

Having considered all assignments of error and propositions, and finding no reversible error, we affirm the judgment of the trial court.

## On Motion for Rehearing.

[5] In its motion for rehearing, appellant prays that we sustain the appellant's original assignments, and reverse and render the judgment of the district court, or modify and reform the judgment of that court and order a remittitur as a condition to the affirmation of that judgment, to the end that appellant will not be required to pay as a royalty more than one-eighth royalty based upon a price of 10 cents per thousand cubic feet for casing-head gas: that being the price which was received by appellant under its contract with the Skelly Oil Company which appellant claims was the best price obtainable therefor, and which contract with the Skelly Company was made in good faith for the benefit of the lease and which has resulted in mutual advantage to appellant and appellee. To support such prayer, it presents, among many others, the following grounds, to wit:

That this court erred in holding that casing-head gas is a constituent of oil, as the term "oil" is used in the written contract;

that such holding is dicta and not essential to the determination of the issues in this case.

This suit was filed by Waggoner to recover for the wrongful appropriation by defendant of casing-head gas of the reasonable market value of $5,000. His claim was based upon the pleading that the lease contract provided that the defendant was to deliver to his credit the equal one-eighth part of all oil produced and saved from the leased premises, and that by virtue of said lease there is agreed to be delivered to the plaintiff the equal one-eighth part of what is known as casing-head gas; said casing-head gas being a product of the oil and a part of the oil. Under this allegation, evidence was introduced, and we held that casing-head gas was a constituent of oil and that plaintiff was entitled to recover his one-eighth royalty therefor. The contention of the defendant that the recovery should be limited to the one-eighth it received under the contract with the Skelly Company cannot be sustained. The contract provided for the delivery of the oil, and, under our holding, of the casing-head gas, to Waggoner. There was no provision, express or implied, that the defendant had the right to exercise any judgment in the disposition of such oil and casing-head gas; they were bound under the contract to deliver the same to Waggoner. The contract with the Skelly Company, therefore, under no rule of law, can furnish a measure of recovery for Waggoner; such contract having been executed without his knowledge or consent, and without authority, express or implied. Waggoner was entitled to the delivery of the casing-head gas to him, and, in the event of failure of the defendant to comply with its contract by which he suffered the loss of his one-eighth royalty in the casing-head gas, the measure of his recovery was the reasonable market value of said casing-head gas at the time it should have been delivered to him. This is solely by virtue of the contract.

The fact that the contract with the Skelly Company was made in good faith does not alter the rule. There was no question of good faith in the performance of the terms of the contract between Waggoner and defendant—defendant's duty was to deliver the oil and casing-head gas. That it resulted in the advantage and benefit to both parties in increasing the flow of oil does not prevent a recovery by plaintiff for such casing-head gas produced. As stated in the original opinion, it was defendant's duty under the contract to produce as much oil as possible, and if by the use of all reasonable expedients it did increase the production of the oil, such production could not be offset against plaintiff's contractual right to recover his one-eighth of the casing-head gas. It might as well be said that, having pro-

duced an excess of oil by this vacuum process, the defendant would be entitled to all such excess of oil.

[6] The casing-head gas, in place, was a part of the realty. As to the action of the Skelly Company in buying casing-head gas, any act of dominion over the property of another constitutes a conversion. Gaw v. Bingham (Tex. Civ. App.) 107 S. W. 931, 932; Henderson v. Beggs (Tex. Civ. App.) 207 S. W. 565.

[7] It is not true that under the facts in this case there could be no conversion of the realty. The rule that when an owner of real estate is dispossessed by a trespasser, he cannot abandon his claim to the property and sue for its value, has no application to a case where a party has been deprived of the title to realty, by a severance and sale or sale by the wrongdoer. In such case the person injured may sue for the value of the property, and such deprivation of the owner of the realty which results in its loss to him is in effect conversion. Phillips v. Herndon, 78 Tex. 378, 14 S. W. 857, 22 Am. St. Rep. 59; Boothe v. Feist, 80 Tex. 141, 15 S. W. 799; Id. (Tex. Sup.) 19 S. W. 398; Espey v. Boone, 33 Tex. Civ. App. 83, 75 S. W. 570. But when such oil or casing-head gas is vaporized, brought to the surface, and delivered to Skelly Company, it certainly became subject to conversion in that form. Any other construction would defeat a recovery of plaintiff as against any third party who had appropriated it without right so to do.

[8] It will be seen from the foregoing statement that the question was presented to us to decide whether or not casing-head gas was a constituent of oil, and that it was necessary for us to decide the very question. Our decision may be wrong, but certainly we were required to decide the matter both by the pleading and evidence and, on that point, our decision is not dicta.

In our original opinion we state that a certified copy of the opinion of the United States Circuit Court of Appeals at New Orleans in the case of Gilbreath v. States Oil Corporation had not been furnished us. After the preparation of our opinion, but before its announcement, such certified copy was filed in this court, and we now add same to the decisions which support our holding that casing-head gas is a part of the oil. This case will be now found published in 4 F.(2d) 232.

We believe we have held correctly that casing-head gas is a constituent element of oil, and have decided the very question presented to us. We also feel that under the facts of this case the owner of land who has leased his land for the development of its oil and gas possibilities, and who provides for the payment of lease rentals by requiring the payment to him by delivery of one-eighth of the oil and a money obligation for the payment for the gas produced, should not be deprived of compensation for any part thereof by reason of a strained construction which would separate the constituent elements of oil while in place and refuse such owner payment for the very substance that he contracted he should be paid for.

Having decided that casing-head gas is a constituent of oil, that Waggoner is entitled under his contract to demand the delivery to him by the Livingston Oil Company of one-eighth thereof as his royalty, that in lieu thereof he is entitled to recover the reasonable market value thereof, that the duty of the defendant was to deliver such casing-head gasoline to Waggoner, that the defendant Livingston Company had no right or authority to make the contract of sale with the Skelly Company to dispose of Waggoner's casing-head gas, and it being immaterial that defendant conceived it to be to the benefit of the lease to make the contract with Skelly, we hold that each and every finding of fact that appellant requests us to make is absolutely immaterial to the disposition of this case, and we refuse such request for additional findings for that reason.

We therefore overrule appellant's motion for rehearing.