GENERAL PETROLEUM CORPORATION OF CALIFORNIA v. UNITED STATES.

No. 7958–Y.

District Court, S. D. California, Central Division.

July 30, 1938.

Martin J. Weil and J. M. Jessen, both of Los Angeles, Cal., for plaintiff.

Ben Harrison, U. S. Dist. Atty., and E. H. Mitchell, Asst. U. S. Atty., both of Los Angeles, Cal., E. G. Sievers, Sp. Atty., Bureau Internal Revenue, of Washington, D. C., and Armond Monroe Jewell, Asst. U. S. Atty., of Los Angeles, Cal., for the United States.

YANKWICH, District Judge.

By this action, General Petroleum Corporation of California, a corporation, seeks to recover the sum of $6194.48 paid by its predecessor, General Pipe Line Company of California, between June 21, 1932, and December 31, 1934, as a tax on casing-head or natural gasoline transported by pipe line.

The payment was made under the Revenue Act of 1932, which imposed a tax "upon all transportation of crude petroleum and liquid products thereof by pipe line originating on or after the fifteenth day after the date of the enactment of this Act and before July 1, 1935." Sec. 731(a), Revenue Act of 1932, 26 U.S.C.A. note following section 1481.

The question we are to decide is whether casing-head or natural gasoline is a product of crude petroleum.

■ Words used in legislative enactments are to be given their natural significance. The sense to be attributed to them is that of the everyday speech of men. If words refer to articles of trade, they are to be interpreted in the sense in which they are understood by those in the trade. See Two Hundred Chests of Tea, Smith, Claimant, 1824, 9 Wheat. 430, 6 L.Ed. 128; Maillard v. Lawrence, 1853, 16 How. 251, 261, 14 L.Ed. 925; American Net & Twine Company v. Worthington, 1891, 141 U.S. 468, 12 S.Ct. 55, 35 L.Ed. 821; Robertson v. Salomon, 1889, 130 U.S. 412, 413, 9 S.Ct. 559, 32 L.Ed. 995; Burke v. Southern Pacific R. Co., 1914, 234 U.S. 669, 34 S.Ct. 907, 58 L.Ed. 1527; Takao Ozawa v. United States, 1922, 260 U.S. 178, 194, 43 S.Ct. 65, 67, 67 L.Ed. 199; United States v. Bhagat Singh Thind, 1923, 261 U.S. 204, 209, 43 S.Ct. 338, 339, 67 L.Ed. 616; City of Lincoln v. Ricketts, 1936, 297 U.S. 373, 376, 56 S.Ct. 507, 509, 80 L.Ed. 724.

These principles are a recognition of the democratic origin of language. Words do not become a part of language unless they get themselves accepted as a part of the everyday speech of man. Technical words, of course, are given the technical significance which their acceptance by a particular craft or group has conferred upon them.

The difficulty which confronts us here is traceable to the absence of agreement as to the meaning of the words "crude petroleum" and as to the derivation of casing-head gasoline.

■ Petroleum is a mineral consisting essentially of a complex mixture of hydrocarbons. Burke v. Southern Pacific R. Co., supra; Webster's New International Dic-

tionary, 1937. Casing-head or natural gasoline is gasoline extracted from wet gas taken from an oil well, at the casing head, in a separator or trap, as the gas leaves the well. The different kinds of gasoline contain the same hydrocarbons in various proportions. But while there is agreement as to the method of extraction, the experts disagree as to the source of the particles of gasoline found in casing-head or wet gas. Some assert that it is a product of the gas. Others assert that even when extracted from a gas well, *it originates in contact with crude oil in some subterranean stratum.* We quote from the testimony of H. H. Cannon, a consulting engineer with long experience in the oil industry, who testified for the Government:

"The Court: Suppose you had a gas well but no liquid visible, at all, so far as you drill it. *What would you consider the gasoline that came from that gas to be?*

"The Witness: *A petroleum product because, in my opinion, that gas has been in contact with a body of liquid petroleum somewhere.*

"The Court: *You don't know where that gas came in contact with the body of liquid petroleum?*

"The Witness: *That is right.*

"The Court: In other words, the presence of the particles of these various things which constitute gasoline which are found in gas and extracted from it by separation, (are?) show clearly a petroleum product?

"The Witness: That is right." (Italics added.)

On the basis of testimony before him, Judge Williams in Twin Hills Gasoline Co. v. Bradford Oil Corp., D.C.Okl.1919, 264 F. 440, 441, arrived at a similar conclusion: *"that wet gas exists only with oil. Therefore, casing-head gas is a component of oil."*

Ordinarily, in instruments dealing with the products of oil, gas is used in juxtaposition with oil. So we speak ordinarily of "gas, oil and other hydrocarbon substances". Much of the legislation concerning oil and having the aim to conserve oil uses this terminology. See Oil and Gas Conservation Law of California, Act 4916, Gen.Laws of Cal.(1937) p. 2069; Laws of Texas, Vernon's Ann.Civ.St. Arts. 6014, 6023, 6029; Compiled Oklahoma Statutes, Secs. 7954–7963, 52 Okl.St.Ann. §§ 271–279. The words "petroleum" and "oil" are, technically, synonymous.

As the experts are in disagreement as to the relationship between gasoline, especially casing-head gasoline, and petroleum, so are the courts. Some hold that gasoline and casing-head gasoline are a part of crude oil or petroleum. See Kings County Fire Ins. Co. v. Swigert, 1882, 11 Ill.App. 590, 598; Poe v. Humble Oil & Refining Co., Tex.Civ.App.1926, 288 S.W. 264; Gilbreath v. States Oil Corp., 5 Cir., 1925, 4 F.2d 232; Connellee v. Magnolia Petroleum Co., Tex.Civ.App.1926, 279 S.W. 597; Locke v. Russell, 1915, 75 W.Va. 602, 84 S.E. 948; Wemple v. Producers' Oil Co., 1919, 145 La. 1031, 83 So. 232; Livingston Oil Corp. v. Waggoner, Tex.Civ.App.1925, 273 S.W. 903. Others hold that they are neither oil nor gas. Clymore Production Co. v. Thompson, D.C.Tex.1936, 13 F.Supp. 469; Hammett Oil Co. v. Gypsy Oil Co., 1921, 95 Okl. 235, 218 P. 501, 34 A.L.R. 275; Ludey v. Pure Oil Co., 1932, 157 Okl. 1, 11 P.2d 102; Broswood Oil Co. v. Sand Springs Home, 1936, 178 Okl. 550, 62 P.2d 1004; Hopkins v. Texas Co., 10 Cir., 1933, 62 F.2d 691; applying Oklahoma decisions; Lone Star Gas Co. v. Harris, Tex.Civ.App. 1932, 45 S.W.2d 664.

With this divergence in the opinion of experts and of courts, the meaning of the words is to be determined in the light of the circumstances attending their use in the particular legislation. What militates in favor of construing casing-head gasoline as a product of crude oil or petroleum is the fact that the wet gas from which it is extracted is *never found except with oil.* The coupling of the words "crude" and "petroleum" is, from a strictly scientific standpoint, tautological. For the word "petroleum" conveys all the meaning which the words "crude petroleum" do. Yet we find that the phrase has been used in legal instruments and in legislation and has received judicial definition. In Kings County Fire Insurance Co. v. Swigert, 11 Ill.App. 590, 598, it is defined as follows: "Crude petroleum consists of a number of different oils, all more or less volatile, which are separated from each other by a process of distillation, and of these, gasoline, being the most volatile, and consequently the most explosive, is the one driven off at the lowest temperature." See 48 Corpus Juris, 1953.

When they occur, as they often do, in various tariff acts, the words are given a broad interpretation. See United States v. R. F. Downing & Co., 2 Cir., 1906, 146

F. 56; United States v. Swan & Finch Co., 2 Cir., 1909, 169 F. 108; United States v. F. A. Marsily & Co., 1 Cir., 1908, 165 F. 186.

The legislative history of the section under consideration shows that the object sought to be attained by the 1932 enactment was *the taxation of gasoline transported by pipe line.* The Revenue Acts of 1917 and 1918, 40 Stat. 300, 315, § 500(d), 40 Stat. 1057, 1102, § 501(d), taxed the transportation of "oil by pipe line". Article 91 of Regulation 49, promulgated under the 1918 Act, defined the word oil as "crude petroleum and such of its products as may be transported by pipe line." The tax on pipe line transportation was repealed in 1921. It was the object of the 1932 Act to restore it. The Act as it reached the Senate Finance Committee retained the word "oil". It was changed in Committee to the present wording. The Committee, in its Report, stated the object of the change to be as follows:

"Part IV Tax on Transportation of Oil by Pipe Line. The rate under section 731 on transportation of oil by pipe line has been reduced from 8 to 3 per cent. The word 'oil' has been changed to 'crude petroleum and liquid products thereof.' *This will make transportation of gasoline as well as crude oil taxable.* Amendments have been made to impose the tax on the pipe line rather than the person paying for the transportation." 1932 C.C.H. Paragraph 2541–b, Special Bulletin, May 31, 1932. (Italics added.)

The Conference Report on the Bill stated the object of the amendment as follows: "Sec. 731(a) Tax on transportation of oil by pipe line. Amendment No. 232: This amendment (addition of words 'crude petroleum and liquid products thereof' following 'transportation of' in first line) makes the tax under the House bill on transportation by pipe line applicable *to crude petroleum and its liquid products, instead of to oil only.* The House recedes." 1932 C.C.H. Paragraph 2547–J, Special Bulletin, June 10, 1932. (Italics added.)

The deliberate substitution of the words "crude petroleum" for "oil" indicates an intention to avoid the possible effect of decisions which had declined to consider gasoline as a derivative of oil. The use of the phrase *"instead of to oil only"* in the Report, shows plainly that the new terminology was to reach *more products* than the old one. If, as contended by the plaintiff, the words "crude petroleum" mean nothing more than "crude oil", then the change was a useless gesture. Yet the conference committee says that they sought words of a broader meaning because they aimed to reach, by the change, products not reached by the old law. It is a peculiarity of the legislative mind in the English speaking world, as it is of its legal mind, to retain phrases which, through long usage, have acquired a definite meaning. This is especially true when a phrase has been the subject of judicial interpretation.

When words existing in a prior enactment which it is sought to revive are changed, the inference is that the old words proved inadequate for the matters which the legislation sought to reach. When added to that is the fact, expressed specifically by the legislative body, that the substitution of wording aimed to achieve a certain result, there is no room for speculation. And when the aim is obvious, the literal or even scientific meaning of a word must be disregarded in order to achieve it. See Takao Ozawa v. United States, 1922, 260 U.S. 178, 194, 43 S.Ct. 65, 67, 67 L.Ed. 199. It is conceded by the plaintiff that the tax applied to straight-run gasoline, i. e., gasoline extracted by various processes directly from the oil. The object of the Congress being to tax *gasoline in general,* without any specific designation of kind, no reason appears for declining to include casing-head gasoline. Casing-head gasoline is gasoline. As the witness Cannon testified:

"Q. Is there *any chemical difference* between the several commodities *contained in the gaseous vapor* in the separator *and in the oil?* A. No. None, at all.

"Q. Can you produce from crude petroleum or crude oil a gasoline which will have approximately the same characteristics as casing-head gasoline? A. Yes.

"Q. Can such a product be utilized for the same purpose as casing-head gasoline is utilized? A. Yes.

"Q. Is there a definite dividing line between casing-head gas and crude petroleum at the separator? A. No. There is not a distinct line of demarcation between those two products.

"Q. Does the petroleum industry recognize that fact? A. Oh, yes.

"Q. Is there a definite dividing line between casing-head gasoline and straight-run gasoline? A. No, there is no definite distinct line of demarcation there.

"Q. Does the petroleum industry also recognize that fact? A. Yes." (Italics added.)

In view of the state of the law at the time of the enactment and its avowed purpose, I am of opinion that the Congress intended to designate by the words "crude petroleum" all the hydrocarbon substances—whether in liquid, solid or gaseous form coming out of an oil well—and that they intended to include not only the gasoline which is mingled with the liquid substance so as to require extraction through various methods but also the natural or casing-head gasoline contained in the gas coming out at the same time as the oil and which can be captured at the casing head through separation.

There is evidence in the record that the word "petroleum" is understood in the trade to include all the hydrocarbon substances coming out of the well and to include specifically casing-head gas. We quote the following from the witness Cannon:

"Q. Did you ever hear in the industry the use of the word 'crude petroleum'? A. I think that is a word that is very rarely used.

"Q. In the industry, what is the common understanding as to the meaning of the term 'crude oil'? I am not asking you the technical meaning, but give us the understanding of the term 'crude oil' and the way it is understood in the industry? A. Crude oil, I think, is considered to be any of that product anywhere from the separator through the dehydrating plant, if any, into the storage tanks, through the pipe lines, into the refining and storage and clear into the final sale. It is all considered crude oil all the way through.

"Q. That is in the industry? A. Yes, in the industry it is all considered crude oil, all the way through.

"Q. *In the industry, what is the understanding of the term 'petroleum products'?* A. *Any product that is derived from petroleum.*

"Q. *And what is 'petroleum'?* A. Well, I have pretty well covered that when I went down to the bottom of the reservoir.

"The Court: Well, go down farther.

"Q. Just repeat it, briefly. A. I don't know as I have checked the actual definition of the word. *My understanding has been that it is any substance that is produced from an oil well, or is mined as asphalt is mined.*

\* \* \* \* \* \*

"Q. *I believe that you stated, in answer to a question asked by the Court, that cas-*

*ing-head gasoline is in* the casing head gas after the gas is separated at the well. Is casing-head gas a *product of petroleum?* A. Absolutely.

\* \* \* \* \* \*

"The Court: Well, it would be on this witness's statement obviously—in common parlance, however, in the industry. In the industry, there has grown up, in the last few years, a certain generic term for petroleum products, and, in the nomenclature, where they speak of liquid oil as oil and gas and they throw in for good measure the term 'and other hydrocarbon substances' in their leases and royalty agreements?

"The Witness: That is true.

"The Court: And all the instruments that are written relating to various products of a well are written with that terminology?

"The Witness: That is right.

"The Court: But, *in the scientific view, and the general view, they are all one and the same thing and are designated,* as you say, *as petroleum and merely divided into the various components after they leave the reservoir.* Is that correct?

"The Witness: Yes sir." (Italics added.)

Alexander B. Morris, Petroleum Engineer of the Department of Internal Revenue, who testified for the Government, states:

"Q. By Mr. Mitchell: Is there any definite or sharp dividing line *between casing-gas and casing-head gasoline and crude oil?* A. *There is no definite, clear-cut line where one can be separated from another.* The only distinction that can be made is where it exists at no set equilibrium point. You might say, for illustration, that you have a bowl of bean soup. In that bowl of soup you might have three navy beans, five lima beans, and 300 of other kinds of beans. It will still be bean soup, however. And these are still portions of crude petroleum regardless of how many compound component parts there be in it.

"Q. *Is casing-head gasoline a product of crude petroleum?* A. *Yes. I can unhesitatingly state that casing-head gasoline is a product of crude petroleum.*

"Q. Is casing-head gasoline a product of crude oil? A. It may be. Not necessarily. It depends on the system.

"Q. Is casing-head gasoline a product of crude petroleum? A. It is." (Italics added.)

These statements lend force to the announced conclusion, derived from the legislative history of the enactment.

■ Tax laws are interpreted liberally in favor of the taxpayer. Doubts arising in their interpretation or application must be resolved against the taxing body. United States v. Isham, 1873, 17 Wall. 496, 504, 21 L.Ed. 728; Crooks v. Harrelson, 1930, 282 U.S. 55, 61, 51 S.Ct. 49, 51, 75 L.Ed. 156; Miller v. Standard Nut Margarine Co., 1932, 284 U.S. 498, 508, 52 S.Ct. 260, 262, 76 L.Ed. 422. But the doubts must be real and must spring from uncertainties apparent on the face of the taxing law. However, where, as here, the legislative history of the enactment and expert testimony in the record show the meaning intended, we would be striving for imaginary doubts, if we failed to apply it.

■ We conclude that casing-head gasoline, transported by pipe line, was taxable under the Revenue Act of 1932 and that the taxes paid by the plaintiff's predecessor are not recoverable.

Judgment will be for the Government. Finding and judgment under Rule 44. Exception to the plaintiff.