# THE ATTORNEY GENERAL
# OF TEXAS


February 17, 1950

Hon. C. H. Cavness  
State Auditor  
Austin, Texas

Opinion No. V-1000

Re: Whether casinghead gas pro-
duced and vented to atmos-
phere is within the royalty
reservation of "7/48ths of
the gross production of gas,
or the value of same" in a
State lease.

Dear Sir:

Your request for an opinion reads in part as follows:

"From the information which we have re-
ceived from the Humble Oil & Refining Com-
pany and records filed in the General Land
Office, we have noted that gas produced
from the lease designated as Mineral File
No. 20001 is being vented to atmosphere.
Our correspondence with Humble Oil & Refin-
ing Company indicates that all gas so vent-
ed is casinghead gas. The Humble Oil &
Refining Company further states that no
gas produced from gas wells has been vent-
ed. If a detailed examination proves that
all of the gas so vented is casinghead gas
only, we ask your opinion of the follow-
ing questions:

"1. Should Opinion No. V-475, dated
January 13, 1948, be construed to mean that
gross production on which royalty is due
the State include casinghead gas that is
vented to atmosphere?

"2. If Humble Oil & Refining Company
uses either casinghead gas or any other
gas on the lease for any lease purposes,
should royalty be due the State of Texas
on the value thereof?

"We are attaching hereto photostatic copy of a letter dated December 16, 1947 from the Humble Oil & Refining Company in which they explain that all gas vented to atmosphere from Lease No. 20001 has been casinghead gas."

The lease designated as Mineral File No. 20001 in your letter was the subject of Attorney General's Opinion No. V-475.

In that opinion it was stated:

"The mineral lease you submit embodies mineral reservations identical in terms (except for the amount) to those minimum mineral reservations required by the Statute, supra. We shall construe the mineral reservations of this lease, therefore, by construing those minimum mineral reservations in the Statute. For in this case the provisions of the lease, paralleling those minimum mineral reservations of the Statute, should be governed by the Statute."

It will be noted that in Opinion No. V-475, supra, the mineral reservations in the lease are considered identical in terms (except for the amount of royalty) with those minimum reservations set out in the statute (Section 10, Article 5421c, V.C.S.). Although the result reached in that opinion is correct, since the opinion erroneously treats the royalty clauses in the lease as tracking the minimum reservations required by the statute, the language of that opinion is modified so as to make the same applicable to the terms of the lease rather than the minimum terms of the statute.

Mineral Lease No. 20001, which is the subject of your request for an opinion, was executed pursuant to House Bill 358, Acts 42nd Leg., R.S., 1931, and provides for royalty reservations as follows:

"... 7/48ths. of the gross production of oil, or the value of same, that may be produced and saved, and 7/48ths. of the gross production of gas, or the value of same, and 1/8th. of the gross production of sulphur or the value of same, that may be produced and sold off the area, and

one-sixteenth of the value of all other
minerals, that may be produced, and an
additional payment of $65,000.00 out of
1/4th. of 41/48ths. of the gross oil pro-
duced and saved from said tract."

There is a well defined distinction in law
between gas produced from a gas well and casinghead
gas. Humble Oil & Refining Co. v. Poe, 29 S.W.2d 1019,
(Comm. App. 1930). At the time of the enactment of
House Bill 358 and prior to the execution of the lease,
the courts had definitely concluded that "casinghead
gas" is included within the term "oil" and a constitu-
ent of "oil." In questions such as you present it had
been determined (with respect to private leases), that
"casinghead gas" reserved is governed by the "oil" (as
distinguished from the "gas") royalty reservation in
the absence of specific reservation provision for
"casinghead gas." Livingston Oil Corporation v. Wag-
goner, 273 S.W. 903, 906 (Tex. Civ. App. 1925, error
ref.); Reynolds v. McMan Oil & Gas Company, 11 S.W.2d
778 (Tex. Comm. App. 1928); Gilbreath v. States Oil
Corporation, 4 F.2d 232 (C.C.A. 5th, 1925, cert. den.
268 U.S. 705). To the same effect see 31-A Tex. Jur.
832, Oil and Gas, Sec. 480. We see no distinction, de-
terminative of the questions involved, to be drawn be-
tween private and State leases. Under the rule announced
in the above cases, "casinghead gas" is undoubtedly with-
in the oil royalty clause of the lease. For a critical
analysis of these decisions, see Hardwicke, Evolution
of Casinghead Gas Law, (1929); 8 Tex. Law. Rev. 1, 16;
3 Summers Oil and Gas 444.

Having concluded, therefore, that "casinghead
gas" falls within the mineral reservation of "oil,"
under the terms of Mineral Lease No. 20001, the State
is to receive as royalty on this lease "7/48ths of the
gross production" of "casinghead gas" or "the value of
same, that may be produced and saved." The words pro-
duced and saved are clear and beyond dispute. "Save"
is defined in Webster's New International Dictionary,
Second Edition, Unabridged (1938), as "catch," "to keep
from being spent, wasted, or lost," "to retain or keep
for a purpose or for possible use." Gas vented or lost
to atmosphere is not "saved." Gas used "on the lease
for any lease purpose" is "saved."

In answer to your first question, therefore,
it is our opinion that the State may not claim royalty

on that casinghead gas that is lawfully vented to atmosphere.  However, we call your attention to the fact that in such cases the Railroad Commission has the power to prevent such venting and waste of gas in accordance with the recent decisions in Humble Oil & Refining Co. v. Railroad Commission, 223 S.W.2d 785 (Sup. Ct. 1949); Railroad Commission v. Sterling Oil & Refining Co., 147 Tex. 547, 218 S.W.2d 415 (1949); and Railroad Commission v. Flour Bluff Oil Corp., 219 S.W. 2d 506 (Tex. Civ. App. 1949, error ref.).

With reference to your second question, however, since we have concluded that the State is entitled under Mineral Lease No. 20001 to "7/48ths of the gross production" of "casinghead gas" or "the value of same, that may be produced and saved," it follows in our opinion that the State is entitled to royalty on "casinghead gas" that is used "on the lease for any lease purpose."

In your second question you have further requested our opinion as to whether the State is due royalty for the use of "any other gas on the lease for lease purposes."  We believe this was answered in our Opinion No. V-475 in which we held that under Mineral Lease No. 20001 the State is to receive "7/48ths" of the "entire" production of gas, regardless of what is sold "off the area," and "without any deductions" for gas used on the premises or in the development of the lease.

## SUMMARY

"Casinghead gas" being within the reservation of "oil" in State leases, under State Mineral Lease No. 20001, reserving "7/48ths of the gross production of oil, or the value of same, that may be produced and saved," the State may not claim royalty on "casinghead gas vented to atmosphere." However, the Railroad Commission has the power to prevent flaring of such gas in accordance with the court decisions in Humble Oil & Refining Co. v. Railroad Commission, 223 S.W.2d 785 (Sup. Ct. 1949); Railroad Commission v. Sterling Oil & Refining Co., 147 Tex. 547, 218 S.W.2d 415 (1949); and

Railroad Commission v. Flour Bluff Oil Corp., 219 S.W.2d 506 (Tex. Civ. App. 1949, error ref.).

The State is entitled to "7/48ths" royalty on casinghead gas produced and used "on the lease for any lease purpose."

Under the lease, the State is entitled to "7/48ths" of the "entire" production of gas (other than casinghead) without deduction of the quantity used "on the lease for any lease purpose."

Yours very truly,

PRICE DANIEL
Attorney General

By: Everett Hutchinson
Assistant

APPROVED:

Charles D. Mathews
Executive Assistant

Price Daniel
Attorney General

EH:db