### BATEMAN v. CLEGHORN.   (No. 10820.)

(Court of Civil Appeals of Texas. Fort Worth. Nov. 1, 1924.)

**1. Appeal and error ⬅══930(3)—Failure to tender special issue not submitted by court will be treated as waiver.**

In absence of request to trial court that special issue be submitted to the jury, the party's right to insist on a presumption of a supposed finding in his favor by the court on that issue is waived.

**2. Master and servant ⬅══258(11)—Allegation of failure to furnish servant safe place to work held to refer to beam on which he was sitting.**

General allegation that employer failed to furnish employee with safe place in which to work held to refer only to condition of beam on which plaintiff was sitting at time of his injury.

**3. Pleading ⬅══34(2)—General allegations of negligence limited and controlled by those of specific acts causing accident.**

General allegations of negligence will be limited and controlled by allegations of specific acts of negligence which are alleged to have caused the accident on account of which damages are sought.

**4. Appeal and error ⬅══930(3)—Finding not presumed without evidence.**

In a case submitted on special issues, where there was no testimony showing defect in derrick causing cable to swing back and forward while pulling casing from oil well, no finding of negligence in furnishing derrick with defect or with respect to swinging of the cable can be presumed.

**5. Appeal and error ⬅══930(3)—Presumption of finding of negligence not warranted under pleadings and evidence.**

In case submitted on special issues, where jury found negligence, constituting proximate cause of employee's injuries, in not furnishing reasonably safe appliances, but plaintiff's testimony showed greasy condition of beam on which he was sitting did not contribute to injury, and failure to furnish roof on which he might have stood was not alleged as negligence, there was no basis for presumed finding by jury of negligence in furnishing greasy beam, even if beam constituted an appliance, quoting Words and Phrases, Second Series, pp. 249, 250; "appliance." .

**6. Judgment ⬅══199(1)—Refusal of judgment notwithstanding held not erroneous, as judgment must follow verdict.**

Refusal of judgment notwithstanding the verdict was proper in view of statutory requirement that trial court's judgment must follow verdict.

**7. Appeal and error ⬅══1175(7)—Court on reversal of trial court's judgment must render proper judgment.**

Duty of Court of Civil Appeals on reversal of trial court's judgment is to render such judgment as should have been rendered below.

**8. Master and servant ⬅══285(5)—Refusal of instructed verdict, on theory master could not have reasonably anticipated servant's act, held not erroneous.**

Refusal of defendant's request for instructed verdict, on theory that he could not have reasonably anticipated that employee through inattention would place his hand in a position where it would come in contact with the broken appliance causing the injury, *held* not erroneous; question being for jury.

Appeal from District Court, Stephens County; Walter F. Schenck, Judge.

Action by D. F. Cleghorn against A. O. Bateman. From a judgment for plaintiff, defendant appeals. Reversed and remanded.

L. J. Wardlaw and Lipscomb & Seideman, all of Fort Worth, for appellant.

L. H. Welch, of Breckenridge, for appellee.

---

⬅══For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

DUNKLIN, J. Appellant, A. O. Bateman, was engaged in the business of drilling oil wells, and appellee, D. F. Cleghorn, was employed by him as a workman in the drilling operations. Cleghorn was employed as a "stabber" in a casing gang. In pulling pipe from a well the casing would be elevated high enough to unscrew the top joint and remove it from the string of casing, and when so removed the string of casing would be again elevated for the removal of another joint, and so on until the whole string of pipe was taken from the well. Before each joint was unscrewed a clamp would be placed upon the string at the top of the well to prevent the remainder of the string from dropping to the bottom of the well when the top joint was unscrewed and removed. The entire string of pipe would be elevated by means of steam power applied to what is known as a bull wheel, around which was wound a cable which ran over a pulley and from thence down to the top joint of the casing, to which the cable would be fastened before the casing was raised. A beam 12 or 16 inches wide and of about the same thickness, and about 8 feet long and about 20 feet above the floor of the derrick, extended from one side of the derrick out to a point sufficiently near the cable to enable a person while sitting astride it and near the end to put a rope around the top end of the top joint of the string of casing after it had been pulled up from the well high enough for that purpose and before the top joint had been unscrewed from the rest of the string of casing—and that it was one of the duties of Cleghorn in his employment as "stabber." The purpose of this rope was to hold up the top joint and remove it from the rig after it was unscrewed from the remainder of the string of casing.

On the occasion in controversy in this suit, while Cleghorn was sitting astride the 8-foot beam mentioned and near its end. the string of casing in the well was pulled up and while the cable was moving upward one end of a loose wire or "wicker," which protruded out from the body of the cable, caught one of the gloves that Cleghorn was wearing and pulled his hand into the pulley through which the cable ran and cut off two of his fingers. Cleghorn instituted this suit against Bateman to recover damages for that injury, and from a judgment in his favor the defendant has appealed.

Plaintiff's petition contained the following allegations:

"That said well had constructed over it a wooden derrick or rig which had been burned by fire and was badly damaged, and defective parts of said rig or derrick being practically destroyed by fire, and the cross beam upon which plaintiff was required to work had become covered with oil and was in such condition plaintiff could not stand on the same and perform the duties required of him in the discharge of his duties in the pulling of said cas-

ing or pipe. That the casing line which the defendant furnished the plaintiff with which to work was defective and worn. That said line had wickers or broken wires loose and swinging about on said line or about said line as it was being operated. That said wickers or wires would break during the operation of said line because of the defective condition of said line, and would without the knowledge of the plaintiff and in such manner while said line was being operated that the plaintiff could not detect said defective line or broken parts and could not see or know that said broken wires or parts of said line were broken and swinging. That the top part of said rig was so defective that while the line was being operated in the pulling of said casing the said line would swing back and forth and would not operate as the line should have been operated had the rig been in good working condition.

"That while the plaintiff was working together with other employees of the defendant, and in compliance with the orders of the defendant, in the pulling of the pipe or casing from said well, one of the employees was working with this plaintiff at said well, and in the pulling of said casing said employee dropped a slip into the cellar near the plaintiff, which attracted the attention of the plaintiff and caused the plaintiff to look to see what had fallen or had been dropped, said noise attracting the attention of plaintiff and causing him to turn his attention to the noise in an effort to ascertain what had fallen. That, at the same time of the dropping of the slip into the cellar by the said employee by the side of the plaintiff and which caused the plaintiff to look, the casing line which was being operated by the plaintiff and other employees and with which the plaintiff was required to work and which was swinging to and fro by the plaintiff, and a wicker or wire broken on said line, and which was not known to plaintiff, caught the glove on the left hand of the plaintiff, jerking the left hand of the plaintiff under the running line and against the block and cut off two of the fingers of the plaintiff's left hand.

"That by reason of the defective appliance with which the plaintiff was required to work, to wit, the defective derrick or rig, and the defective casing line, and defective place plaintiff was required to perform his said duties on said rig, same being about 18 or 20 feet upon said rig, and by reason of plaintiff's left hand being caught by the wicker or broken wire on said line and by reason of said line swinging and catching plaintiff's hand and jerking it under the line and block, the plaintiff received certain injuries, to wit, plaintiff's left hand was jerked under the running line and the two fingers next to the thumb on the plaintiff's left hand, being the forefinger and the finger next to the forefinger on the left hand, were cut off just below the first joints or were so torn, cut, lacerated, bruised, and the bones in said fingers so crushed, to the extent that plaintiff was forced to have said fingers amputated between the first and second joints on said fingers.

"That the catching of the glove of the plaintiff by said wicker or broken wire on the said line, and the injuries sustained by the plaintiff, were caused by the negligence and carelessness of defendant in this, that said defendant failed to furnish the plaintiff with a safe place to perform his duties in the pulling of said casing, in

that the defendant failed to furnish the plaintiff a safe rig or derrick upon which to work, and failed to furnish the plaintiff a safe and suitable place to stand in the performing of his duties required of him in the discharge of his duties as directed by the defendant, and failed to furnish the plaintiff with a safe place to work and free from oil and grease, and failed to furnish the plaintiff with a safe and proper casing line, neither the said rig or derrick, the place upon which this plaintiff was required to stand to perform his duties nor the line with which plaintiff was required to work being reasonably safe for the plaintiff to perform the duties required of him; said line being old, worn, and not of sufficient strength to pull said casing without breaking and having broken wires swinging loose on said line during its operation, and which could not be discovered by the plaintiff during the said operation of said line, and not being safe place to work nor safe appliances or tools with which to work as should have been furnished by a man of ordinary prudence under the circumstances to avoid accident or injuries to the employment."

In answer to special issues, the jury found that the defendant "did not furnish the plaintiff reasonably safe appliances with which to work," and that such failure constituted negligence, which was the proximate cause of his injuries, and for which injuries they allowed damages in the sum of $2,000. The jury further found that the defendant exercised "ordinary care to furnish the plaintiff a reasonably safe casing line with which to perform his duties."

No other issues of negligence were submitted to the jury than those two issues, to wit, first, whether or not the defendant furnished reasonably safe appliances with which to work and was guilty of negligence in such failure; and, second, whether or not defendant exercised ordinary care to furnish plaintiff a reasonably safe casing line with which to perform his duties.

[1] The record shows no request made of the trial court to submit to the jury the issue of alleged negligence in failing to furnish plaintiff a safe place to work, and therefore it must be held that plaintiff thereby waived any right to insist upon a presumption of a supposed finding by the trial court in his favor upon that issue. Such was the holding in the case of G., H. & S. A. Ry. v. Price, 240 S. W. 524, by the Commission of Appeals, in which the following was quoted with approval from the case of Texas City Transportation Co. v. Winters, 222 S. W. 541, by the same court, to wit:

"The power of the trial court to substitute its findings, where none have been made by the jury, does not admit of a finding by the court upon an independent ground of recovery which the party alleging it does not urge. In such case, the issues submitted will be treated as embracing the only grounds upon which recovery can be had, and the failure of plaintiff to tender an issue not submitted by the court will be treated as a waiver or abandonment thereof."

To the same effect is Texas Drug Co. v. Cadwell (Tex. Civ. App.) 237 S. W. 968, writ of error refused.

[2] However, the general allegation to the effect that defendant failed to furnish plaintiff a safe place to work could be construed as having reference only to the greasy condition of the beam where plaintiff was sitting at the time of his injury, and if the jury found that the beam in that condition was not a safe appliance with which to work, that finding perhaps might be construed as equivalent to a finding that the defendant did not furnish plaintiff a safe place to work.

[3] General allegations of negligence will be limited and controlled by allegations of specific acts of negligence which are alleged to have caused the accident on account of which damages are sought. Cavin v. Hill, 83 Tex. 73, 18 S. W. 323; De La Vergne Refrigerating Mach. Co. v. Stahl (Tex. Civ. App.) 54 S. W. 40, and decisions there cited; Ebersole v. Sapp (Tex. Com. App.) 208 S. W. 156.

[4, 5] In view of what we have said, the only basis for the judgment in plaintiff's favor was the finding by the jury that the defendant did not furnish to plaintiff "reasonably safe appliances with which to work, and that such failure constituted negligence, which was the proximate cause of his injury." The trial court in its charge to the jury did not define what was meant by the term, "appliances with which to work," as used in the first issue submitted to the jury and in answer to which the jury's finding was in plaintiff's favor; nor do we find in the record any objection urged by counsel for either party to the submission of the issue in that form; nor any requested instruction for a specific finding by the jury as to what particular appliance they found to be unsafe. In 1 Words and Phrases, Second Series, pp. 249, 250, several authorities are noted, according to some of which neither the derrick nor the beam upon which plaintiff sat at the time of his injury would constitute an appliance within the meaning of statutes requiring the master to furnish to the servant safe appliances with which to work; while other decisions are noted which are apparently of a contrary effect. However, we will consider the word "appliances," as used in the charge of the court, as sufficiently broad to include the derrick, the casing line, and the beam on which plaintiff sat at the time of his injury.

No testimony was introduced to show any defect in the top of the derrick which caused the cable to swing backward and forward while it was pulling the casing from the well, as plaintiff testified it was swinging; so that allegation, with the further allegation of negligence in furnishing a derrick with that alleged defect, may be eliminated from the verdict of the jury, since a finding

thereon in plaintiff's favor cannot be presumed in the absence of evidence to support it. And the casing line must be eliminated from the term "appliances," found by the jury to be defective, since they specifically found that the defendant exercised ordinary care to furnish a reasonably safe casing line.

The only other appliance, if appliance it be, which it can be presumed the jury intended to find as unsafe, and the furnishing of which was negligence, which proximately caused the plaintiff's injury, was the beam on which plaintiff was sitting at the time of his injury. The only alleged reason why the beam on which plaintiff was sitting at the time of his injury was unsafe was because the same was covered with grease, and therefore he "could not stand on the same and perform the duties required of him," and that the defendant was negligent in failing to "furnish the plaintiff a safe and suitable place to stand in the performance of his duties required of him as directed by the defendant, and failed to furnish the plaintiff with a safe place to work and free from oil and grease."

Plaintiff testified that the accident happened substantially in the manner alleged in his petition. He further testified that other derricks upon which he had worked had a roof on each side of the beam on which the "stabber" can stand while performing the services he was performing, and while in that position he, is out of danger of injury from the moving cable, and that if there had been such a roof on the derrick in question he could have sat on it and been "out of the way of this line." He further testified to the effect that the greasy condition of the beam in controversy did not contribute to cause his injury, since even if it had been free of grease he would have been compelled to sit astride it while performing his duties; in other words, he could not have performed those duties while standing up. He said that if the beam had been free of grease he could have walked back and forth on it, but it was necesary for him to be at the place where he was at the time of his injury, and sitting down or on his knees while performing his duties. He further testified that his hand was caught when his attention was attracted by the noise below of a slip falling ino the cellar and some one hallooing, "Look out." But neither he nor any one else testified to any defective condition of the derrick which caused the cable line to swing to and fro at the time of the accident.

The failure to supply the derrick with a roof for plaintiff to stand on while performing his duties, such as testified to by plaintiff, was not alleged as negligence, furnishing a ground for recovery. But the greasy condition of the beam on which plaintiff sat at the time of his injury was the only alleg-

ed reason why the beam was an unsafe appliance, which the plaintiff was required to use in order to discharge his duties. However, as noted, according to plaintiff's own testimony, which was uncontradicted, the the greasy condition of the beam was not a contributing cause of his injury, since, as testified to by him, he could not have performed his duties by standing upon the beam even if it had been dry; in order to perform those duties it was necessary to sit down or be on his knees.

It follows, therefore, that there was no basis in the pleadings or in the proof for a supposed finding by the jury that the defendant was guilty of negligence, which was the proximate cause of plaintiff's injury, in furnishing him the beam so greasy on the top side that plaintiff could not stand on it, or in furnishing a defective derrick or rig.

[6, 7] The assignment to the refusal of the court to render a judgment in appellant's favor, notwithtanding the verdict of the jury, cannot be sustained, in view of the statutory requirement that the judgment of that court must follow the verdict. Ablowich v. Greenville National Bank, 95 Tex. 429, 67 S. W. 79, 881; Waller v. Liles, 96 Tex. 21, 70 S. W. 17. That statute and those decisions, however, do not apply to this court, whose duty it is upon a reversal of the judgment of the trial court to proceed to render such judgment as the trial court should have rendered. Henne & Meyer v. Moultrie, 97 Tex. 216, 77 S. W. 607.

[8] Nor are we prepared to say that the court erred in refusing appellant's request for an instructed verdict in his favor upon the theory that the defendant could not reasonably anticipate that plaintiff, through inattention, would place his hand in a position where it would come in contact with the broken wicker at a time when he was not required, in the discharge of his duties, to place his hand in that position. Appellant has cited such decisions as Ry. Co. v. Bigham, 90 Tex. 227, 38 S. W. 162; Dayton Lbr. Co. v. Hastings (Tex. Civ. App.) 152 S. W. 863; Seale v. G., C. & S. F. R. Co., 65 Tex. 274; Gulf Ref. Co. v. Simms (Tex. Civ. App.) 168 S. W. 379; Ebersole v. Sapp (Tex. Com. App.) 208 S. W. 156; Ry. Co. v. Sears (Tex. Com. App.) 210 S. W. 684. But we do not believe those decisions should be given controlling effect in this case. On the contrary, we are of the opinion that a determination of the question whether or not such an injury should reasonably have been anticipated as a natural and probable consequence of the protruding wicker was the province of the jury, in view of all the facts and circumstances in evidence.

But we are of the opinion that, since the jury found that the defendant was not guilty of the alleged negligence in furnishing the cable with a broken wicker, and since there was no sufficient basis in the evidence for

a finding by the jury that the defendant was guilty of the alleged negligence which was the proximate cause of plaintiff's injury in furnishing any of the other appliances, the judgment is so fundamentally erroneous we cannot affirm it, and therefore must reverse it and remand the cause; and it is so ordered.